Good morning. May it please the Court, my name is David Schlesinger. I represent the appellant, Israel Ornelas. This case presents an issue of first impression in this circuit regarding whether, under Rule 43c1b of the Federal Rules of Criminal Procedure, a district court, as the Seventh Circuit, in a very commonsensical opinion, promulgated in United States v. Archbonny, whether the district court is required, prior to sentencing a defendant in absentia, conducting at least some sort of searching inquiry into the circumstances surrounding the defendant's absence from court that day. That did not happen here, and this is a quintessential case illustrating why, should this court adopt the Seventh Circuit's Archbonny rule, this case illustrates precisely why such a searching inquiry is required. Mr. Ornelas Are you suggesting that the searching inquiry requires the defendant to be present in order for that inquiry to take place? No, it does not, Your Honor. As the Seventh Circuit determined in Archbonny, that that inquiry has to happen whenever there are serious questions presented in the record regarding the defendant's absence and whether it was truly voluntary. And what were the serious questions in this case? In this case, Your Honor, Mr. Ornelas had a well-documented history of serious substance abuse problems. Prior to his arrest in September of 2013, he had been using methamphetamine, as he told the probation officer, three times a day for a period of more than four years, beginning in 2009. He was, and that was one of his bond conditions. Obviously, he could not be using methamphetamine, and he had an initial threshold drug test in, I believe it was in October of 2013, to determine whether further additional conditions were necessary, whether further additional drug testing conditions were necessary. What kind of record did he – he was represented by counsel, correct? That's correct, Your Honor. And was it the same lawyer that negotiated the plea agreement? It was the same lawyer, Mark Geller, who negotiated his plea agreement. That's correct, Your Honor. And counsel was at the sentencing hearing, correct? He was at the sentencing hearing. That's correct. What sort of record did he make that we could turn to if we're interested in applying the Seventh Circuit standard that you're advocating? Candidly, Your Honor, Mr. Geller did not make as complete of a record as he could have. He did preserve the issue by objecting on constitutional grounds, on due process grounds, to the hearing going forward. That was because there was a failure to consult regarding the plea agreement, right? No, I believe he simply was not as diligent in, I think, ascertaining the circumstances regarding his client's non-appearance, and probably not as aware that in the Rule 43 context, at least in other circuits, as we've discussed with Adjabani, there is a need for more search and inquiry. If this Court were to determine that Mr. Geller's failure to explore those circumstances essentially forfeited Mr. Ornelas' Rule 43, C-1B argument, I think he would have a very compelling 2255 motion on an ineffective assistance of counsel. And he may well have. I'm just trying to put myself in the shoes of the trial judge. And, you know, it's a bit of a scavenger hunt, I suppose, for the judge to infer from, you know, drug abuse or mental illness that that's the reason for a lack of voluntariness here. And I understand Your Honor's concern. My issue with what the district court did, Your Honor, is that it didn't do any inquiry at all. It merely inferred from Mr. Ornelas' non-appearance at his failed revocation hearing. Okay. Assume that the judge said, I think he's not here, I think the better law is Akbani and I'm going to follow Akbani. What would he do that would have changed the outcome here? Well, he should have at least alluded to the pre-sentence report, which did mention Mr. Ornelas' history of narcotics abuse and mental health issues. I should also note that in May or June of 2014, he was diagnosed by a mental health professional with having attention deficit hyperactivity disorder. So there are two. The best he could do from the record would be to dismiss the proceedings for, you know, allow counsel, I guess, to develop a better record. Is that what you want the rule to be? That's correct, Your Honor. Because I don't think on this record anybody could say you could make a determination one way or the other about voluntariness. It's just unclear. You certainly could make a conclusive determination, Your Honor. But the better practice has occurred with the district court in Akbani was to continue the sentencing and allow the government to investigate further the circumstances why there was an absence. And shouldn't we rely on, you know, in an adversary setting allow defense counsel to make that argument? Yeah. And I certainly think, Your Honor, in an ideal circumstance that would be appropriate. And I do think Mr. Geller quite candidly was deficient in not doing that here. But Akbani does not say anything about the district courts being triggered to do such inquiry only because counsel asks the district court to do so. The Seventh Circuit rule in Akbani, as I understand it, requires at least some minimal inquiry, you know, even in absence of counsel suggesting it. And as we just discussed, there were palpable indications in the record that Mr. Ronelis had some serious problems that may have triggered an involuntary absence from both his bail revocation hearing and his sentencing hearing. So is it your position that as long as Mr. Ronelis is on the lam voluntarily or involuntarily that because he has mental illness that basically you can't proceed with the sentencing in absentia? Is that your position? My position, Your Honor, is he would not be able to proceed in absentia provided that a governmental investigation of the underlying circumstances and I think as appropriate Well, if he's not there, how can they investigate it? What do they know? How do they know what his current mental circumstances are if he's on the lam? They would be able to determine, for example, whether he had checked into local hospitals, whether he was in some kind of substance abuse treatment facility. It wouldn't need to be as extensive as the international investigation that took place in Akbani, but there would at least need to be more of an inquiry than the district court merely saying, well, he was not present at the bail revocation hearing. He's not present today. I therefore determined it's voluntary. Well, he had a lot more than that, did he not? I mean, he signed agreements. He'd been before this magistrate judge many times. He indicated he knew he was supposed to be there. He signed a document saying he was supposed to be there. His counsel told him to be there. He just stopped telephonically reporting and disappeared. And they didn't find him for, how long was it? Years? It was years, wasn't it? It was a matter of months. He was finally arrested in March of 2015, Your Honor. Okay. So under the circumstances, I guess I'm just trying to be practical as my colleague is here. I understand your argument. I understand the concern about the rule. But given the state or lack thereof of a rule in our circuit at the time, what more could the district judge have done under your proposal than to simply suspend everything indefinitely until your client could be arrested? It wouldn't have needed to be indefinitely, Your Honor. Why not? I would note that I would like to reserve some time for rebuttal. Let me finish my answer. Yeah, please answer that. In Ashbani, the delay merely lasted three months while the government did an investigation. So it wasn't a very invasive delay in the proceedings. Well, again, that's the facts of Ashbani. But in this case, I mean, you've led to all kinds of problems here. It's entirely possible that this man may not have been found for years. And you're, I think, suggesting that until he's found, until you can have a further investigation of his then current mental status, you can't go forward with such a proceeding. Is that incorrect? No, I'm not suggesting, Your Honor, that you would need to have such an interminable delay or indefinite delay. How do we cabinet? How do we cabinet? I think you cabinet by at least requiring some sort of inquiry into the circumstances. And here, the district court may very well, after a minimal governmental investigation, have determined that Mr. Anellis cannot be located at any health treatment facility. Is that required? I'll give you some more time. I appreciate that, Your Honor. Is that required, given the fact that he previously appeared, he signed, he agreed to be there, there was a finding that it was voluntary when he did that, he knew he was supposed to be in touch telephonically, he just didn't follow what he said he was going to do, and the court had him before. I acknowledge those circumstances, Your Honor. And I acknowledge that his decision, at least, to begin using methamphetamine to relapse into his drug addiction was, to a certain extent, voluntary. But that did happen after he signed the acknowledgment, noting that the sentencing hearing had been continued to November 24th of 2014. So there was an intervening circumstance. That would be a poor choice of his, but it was one that could have rendered his failure to appear on November 24th an involuntary one. So what you're saying, let's just say it was a drug offense, just hypothetically, a drug offense. He can indefinitely, perhaps, postpone his sentencing by going back on the drug because then he wouldn't be responsible for what he decided before. Is that your position? Certainly, if he made a conscious choice to do that, that would certainly have an effect on the district court's voluntariness finding. I think, as is true in many circumstances, the relapse occurs because he had a serious addiction. He had an illness, and he simply made a mistake. We'll give you some time here. Can I ask just one record-based question? Did the sentencing court know that additional drugs had been discovered after the preparation of the PSR? It knew on the day of sentencing, Your Honor, as Ms. Cabral made a proffer to the district court regarding those facts. She did mention, though, that Mr. Ornelas had not been confronted with those additional facts, and she quite professionally acknowledged that if Mr. Ornelas were to appear, that he would have an opportunity to dispute those facts regarding the additional narcotics that the government believed Mr. Ornelas was engaged in distributing. Thank you. Very well, we'll give you a little extra time. Thank you very much, Your Honor. Counsel? Good morning. Janet Cabral for the United States. The district court made a finding here, based on the record before it, that the defendant had absconded and had absented himself from the proceedings. And based upon that factual finding, which was not clearly erroneous, the district court acted well within the scope of its discretion when it went forward and sentenced Mr. Ornelas an absentia. The facts before the district court showed that he had appeared on several occasions. He was there for the bond hearing, where he agreed and he signed his bond, acknowledging that he understood that he needed to be present at all future court proceedings. He was, in fact, present for numerous court proceedings before the sentencing judge. He had these circumstances. Let me just interrupt one second. When he appeared at those earlier hearings, it was clear to the district, I guess the magistrate judge in this case, right? Most of those appearances were before the district judge. Okay, okay. In any event, the district judge was aware of his drug abuse when he made these previous appearances, right? That was in the record. That was clear? Well, what was in the record, Your Honor, and what his counsel refers to is in the PSR at page 11, there's a reference that Mr. Ornelas told a probation officer at the time of the pre-sentence interview that he had been using methamphetamine three times a day on a daily basis for four years before his arrest. Other than that statement, that is the evidence in the record that Mr. Ornelas suffers from a serious drug addiction. I think that there's other information in the record that shows otherwise. When he was initially at his initial bond hearing, page 8 of the excerpts of record, the magistrate judge at the very first bond hearing made the comment there's no evidence of any drug or alcohol abuse and that's why he didn't initially impose a drug testing condition as a condition of bond. We were back in there a short time later after the defendant told the probation officer, the pretrial services officer, and it's at page 15 of the excerpts of record, that seven months earlier he had used marijuana. And so up until the time of the pre-sentence report, that was the evidence in the record regarding the defendant's drug use. How many times did he successfully attend a judicial proceeding? I apologize, I don't have the exact number, but I would say it was probably at least six times. The case he was indicted in September of 2013, he did not enter a guilty plea until September of 2015. This case involved four other defendants, so there were continuances because of the number of defendants. And is there anything in the record regarding how many times he interacted successfully with his lawyer? Well, he... Assuming for all those proceedings, at least. Sure. He had just retained Mr. Geller. Mr. Geller is an experienced and capable defense attorney. He's... Before the district court, I've had numerous cases with him. He's an experienced attorney, and he didn't come forward. We filed our motion indicating we intended to go forward with sentencing in absentia. We filed that sentencing memorandum several weeks before sentencing. If there were facts that raised a plausible doubt as to whether or not Mr. Ornelas was voluntarily absent, had absconded, what the district court had before it was the fact that a search warrant had been executed at Mr. Ornelas' house, methamphetamine was found, he had submitted a falsified letter to probation, and all of those facts combined, once that was discovered, he left. What role does the government notice in advance to the defense counsel that you intended to proceed with the sentencing in absentia? What role should that play, if any, in our determination? I think, insofar as it's suggested that the district court had a duty to conduct this searching inquiry, even the Seventh Circuit, Nekbani said that duty directly relates to the facts before the court. And here, defense counsel had notice. And so, if Mr. Ornelas had been in custody, if he had been committed to a mental hospital, that would have been information he would have been able to obtain. And one other thing I want to note is there are no cases that are cited by the defense even suggesting that even if the facts are that he was back on methamphetamine, that that use of methamphetamine, that someone's use of an intoxicant like methamphetamine or alcohol, there's no case law to suggest that that in and of itself would have rendered his absence involuntary. And there's also the suggestion that he had been diagnosed with ADHD. I have not seen any case law and defense certainly didn't cite any that would support the proposition that that would have rendered his absence involuntary. Is the government, would you advocate that the 9th Circuit adopt the Akbani plausible doubt standard? If not, where would you go? I don't think that the Akbani plausible doubt standard is really any different from this Court's standard in Marotta, which was look, if there are facts in the record, the burden is upon the defendant, whereas here there are facts in the record showing that his absence is voluntary, that he has absconded after being caught using methamphetamine again. Where those are the facts, the defense then has the burden to come forward with some information that would rebut this voluntariness. And so from that perspective I don't think that the Akbani standard is really any different from this Court's. In Marotta, that dealt with, we reviewed the District Court's action for an abuse of discretion, right? Correct. And that's the standard we should review the District Court's action in this case is abuse of discretion. That's correct, Your Honor. Okay. I do want to just briefly address the waiver issue, the appellate waiver. This defendant entered into a plea agreement that contained a waiver of appellate rights and certainly the rule is that if the defendant has a constitutional issue or the sentence is unlawful that they can nonetheless appeal. This sentence certainly was not unlawful. He was charged with the distribution of methamphetamine. The maximum sentence for that, given his admission of his prior drug conviction, was life imprisonment. It was a mandatory minimum sentence, right? It was a mandatory minimum 10-year. It was a maximum of life. So under this Court's authority, it wasn't an unlawful sentence. So then the next question is, is it a which is the primary case relied upon by the defense in this case. It's a Rule 43 case. It barely even mentions any constitutional amendment. In the defense brief, there's a couple different places, page 23 and 24, mentioning the words due process. There's no cases cited. And so the United States believes at the outset that the appellate waiver here was valid and so the Court doesn't even need to reach the issue. I think his argument is a fairly narrow one. I think he's arguing only that the record should the judge should have made some inquiries and he failed to do it. And your position, I gather, is that nothing on this record obligated the judge to do more than was done. My position is that the record itself demonstrated that he was voluntarily absent and there was nothing in the record to raise any doubt. So I think then if he wants to rebut, he has to rebut that fact, don't you think? I do, Your Honor. So in other words, a further inquiry would have been duplicitous. Correct. If you have nothing further, I'll submit. Thank you very much. Counsel, we'll give you a minute and a half to rebut. Quickly address the Supreme Court held in Taylor v. United States. Rule 43 is only constitutional to the extent as Rule 43 itself provides that the absence is a voluntary one. So essentially we're dealing with coextensive considerations here. The constitutional boundary and the Rule 43 boundary are exactly the same. So there's no doubt that Mr. Geller preserved the constitutional issue. Did you raise the constitutional issue in the way you're required to do? I did, Your Honor. In the opening brief, I did explicitly raise the constitutional issue. On a due process basis? I did, yes, Your Honor, under Taylor. So I think there's this Court has long established that the Appellate Waiver Doctrine does not apply to constitutional issues. So this Court has jurisdiction to consider the issue. Regarding the question of whether the District Court made clearly erroneous findings, we're essentially arguing that the District Court didn't engage in a proper procedurally mandated inquiry. So even to the extent that the District Court made a voluntariness finding, it did not jump through the mandated Archibany hoops, assuming this Court decides to adopt that rule. I think we got that point. Did we give him the full minute and a half? We did. So, Counsel, I think we're all done here, but we thank you very much for your argument. Thank you, Your Honor. Thank both Counsel. The case that's argued is submitted.
judges: Tymkovich, Farris, M. Smith